```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
```

WILLIAM REYES,                                    :

             Petitioner,          :       **REPORT AND RECOMMENDATION**

      -against-                          :       06 Civ. 5525 (SHS)(KNF)

SUPERINTENDENT ERCOLE,                :

                                   :

            Respondent.         :
```
--------------------------------------------------------X
```
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE SIDNEY H. STEIN, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Before the Court is William Reyes' ("Reyes") amended petition for a writ of habeas corpus made pursuant to 28 U.S.C. § 2254. Reyes contends his confinement by New York State is unlawful because: (1) his conviction violated his right to due process, because it was against the weight of the evidence; (2) his rights to due process and a fair trial were denied, when the prosecution's witnesses committed perjury, as evidenced by the "Flik investigative report" ("Flik report")[1] and an affidavit by Barbara Womack ("Womack affidavit"), a concession stand employee for Circle Line Pier ("Circle Line"); (3) the prosecutor failed to disclose exculpatory evidence, in violation of the Fourteenth Amendment, Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), and People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S. 2d 448 (1961); (4) the trial court admitted into the record, improperly, evidence of the victim's "emotional response to the rape"

---

[1] It appears, from the record, that Flik International is the parent corporate entity of the petitioner's former employer, Circle Line Pier.

and "her prior history of sexual abuse by her father"; (5) the prosecutor's misconduct during jury selection deprived him of a fair trial by an impartial jury; and (6) his trial counsel rendered ineffective assistance to him by failing to object, or by making generalized objections, to: (i) various prejudicial aspects of the jury selection process; (ii) the victim's testimony concerning her history of prior sexual abuse; (iii) testimony about the victim's emotional responses to the rape; and (iv) the prosecutor's reliance on that evidence in summation.

Respondent opposes the petitioner's application, which is analyzed below.

## II.  BACKGROUND AND PROCEDURAL HISTORY

In June 2002, Jane Martinez ("Martinez") was hired by Circle Line[2] to work in a concession stand. Reyes was Martinez's manager. Shortly after Martinez began working for Circle Line, Reyes grabbed Martinez and kissed her on her lips, and Martinez pushed Reyes away from her.

On July 2, 2002, her fourth day of work, Martinez heard Reyes receive a radio transmission requesting that Reyes retrieve coffee urns from one of the Circle Line boats. Reyes asked Martinez to collect the coffee urns, and Martinez walked toward the boat and Reyes followed her. Once on the boat, Reyes asked Martinez to search for the coffee urns on the lower level, where the bathrooms were located. As Martinez descended the stairs, Reyes grabbed her arms and forced her down the stairs and into a bathroom stall. Reyes forcibly held Martinez as he touched her breasts, untied her pants, penetrated her and ejaculated. Once Reyes released Martinez, she left the stall, and Reyes warned Martinez not to say anything to anyone because they would both be fired. Martinez returned to the concession stand and initially told Sylina

---

[2] Circle Line offers sightseeing cruises around Manhattan.

King ("King"), a Circle Line employee, that something had happened to another employee on the boat, but "eventually," Martinez told King that something had happened to her.

At noon, Martinez's boyfriend arrived at Martinez's workplace; Martinez did not tell her boyfriend about the incident with Reyes. Martinez went to her home and showered, because she "felt disgusting." Later that day, Martinez spoke with her friend, Serita Godby ("Godby"), but, because Martinez did not have privacy where the telephones were located at the group home where she resided, Martinez did not tell Godby about the incident on the boat. Martinez stayed at her boyfriend's home that night and washed the clothes she had worn that day. Martinez did not tell her boyfriend about the assault by Reyes, or the injuries she suffered from the attack, including: a scratch on her back, pain "everywhere," bruised thighs and a broken fingernail.

The following day, Martinez arrived to work at the concession stand. She spoke with Godby about the assault by Reyes, and Godby took Martinez to her "immediate manager," Dinaldo Khanii ("Khanii"), to whom Martinez recounted the incident. Thereafter, the police were called to the scene, and Martinez was taken to a hospital, where she was examined by doctors. On July 10, 2002, Martinez went to a police precinct to view a lineup, and she identified Reyes as the man who had assaulted her.

Following the petitioner's arrest, he was indicted for one count of first-degree rape and two counts of first-degree sexual abuse. Jury selection for the petitioner's trial began on March 19, 2003. In relevant part, during voir dire, the prosecutor posed the following hypothetical situation to the potential jurors: "[Y]ou . . . have a daughter, let's say, around the age of 18, who just got a job as a secretary and she tells you that . . . her boss had asked her to stay after work late and that she had done so and that after she and he were the last two people left, he had forced

her onto a desk and forced her to have sex." The prosecutor asked the potential jurors whether they would believe that their hypothetical daughter had been raped if: (1) a weapon had been displayed; (2) "if she didn't physically fight off her boss during the situation"; and (3) no visible signs of injury existed.

During the trial, Martinez testified that, when she was approximately 13 years old, she stopped living with her parents, because her father had molested her sexually for five years. When she finally told her mother about the abuse, "[her] mom could not handle it and she left [Martinez]." Martinez explained that, for the last five years, she lived in seven "group homes," found living in group homes to be "hard and stressful," and is "not able to trust anyone."

With regard to the assault by Reyes, Martinez stated that she cried and felt "embarrassed" and "upset," as a result of Reyes' actions, and, when she saw herself in a mirror after the attack, she looked "sad" and "depressed." Martinez asserted that, on the day of the assault, the only employee of Circle Line whom she told about the rape was King. Martinez stated that, after he raped her, Reyes returned to the concession stand and appeared to be "fine," and noted, over objection, that she felt "sad because he had just touched [her] everywhere, [and] didn't care what he did."

King also testified. She recalled that, on the morning of July 2, 2002, she saw Martinez at the concession stand and observed that Martinez "looked sad, her eyes were red, her cheeks w[ere] red, her hair was kind of messed up, her shirt was tucked out of her pants," and she was "walking funny," with her "legs . . . a little apart." King stated that Martinez told her she had been raped. Thereafter, King spoke separately with Jason Iovino ("Iovino") and Khanii, Circle Line managers, and King told them "about [her] conversation" with Martinez.

4

Reyes testified in his own defense, and stated that, on June 27, 2002, he spent the entire day training Martinez to work at the Circle Line concession stand, and that, during training, they discussed their personal relationships and children. On July 1, 2002, Reyes had planned to take Martinez to the Cloisters, where there was "a place to park and just talk," but they did not go.

Reyes explained that, on July 2, 2002, he and Martinez went to a Circle Line boat to retrieve coffee "canisters," and Martinez asked him why he had not taken her to the Cloisters the previous day. Reyes asked if he "still had a chance," and "invited her go to downstairs with [him]," where the bathrooms are located. Once downstairs, Reyes and Martinez started kissing; Reyes "took [Martinez's] hand and . . . put it on [his] penis. . . . and she started squeezing it"; and Reyes then "turned her towards the sink." Reyes then removed Martinez's pants, retrieved a condom from his wallet and put it on, and had intercourse with Martinez. Afterward, Reyes told Martinez "this is just sex," and he did not want this encounter to be a "problem for [him] and [his] girlfriend."

During the prosecutor's summation, Martinez was described as a "survivor" in that she, "at 9 years old[,] began a five year ordeal at the hands of her biological father. . . . that left her withdrawn, wary of people, men in particular." The prosecutor argued that "Martinez . . . has managed to overcome sexual victimization and humiliation–not once, but twice." The prosecutor stated that, as a result of the rape, Martinez felt "upset," "embarrassed," and she cried.

While delivering its instructions to the jury, the trial court explained, inter alia, that the jury, "may not consider anything outside of the evidence," and that "[t]his case will be decided based on the credible or believable evidence you heard or the lack of such evidence and for no other reason." In addition, the trial court instructed that the jury's "recollection and

5

understanding of the facts . . . control regardless of anything I may have said or anything the attorneys have said," and noted that "[n]othing that we have said is evidence."

On March 28, 2003, the jury found Reyes guilty for one count of first-degree rape, and two counts of first-degree sexual abuse. On July 11, 2003, the petitioner was sentenced to eighteen years imprisonment on the first-degree rape count, and seven years imprisonment on each of the first-degree sexual abuse counts, which were all to run concurrently.

In November 2004, Reyes filed his appellate brief with the New York State Supreme Court, Appellate Division, First Department, in which he argued that: (1) the verdict was against the weight of the evidence and violated his right to due process; (2) the trial court admitted into the trial record, improperly, the evidence of the victim's "emotional response to the rape" and "her prior history of sexual abuse by her father"; (3) the prosecutor's misconduct during jury selection deprived him of a fair trial by an impartial jury; and (4) his sentence was harsh and excessive. Reyes noted, in his brief, that his trial counsel had failed to object, initially, to the questions regarding Martinez's "emotional response to the rape."

On April 19, 2005, the Appellate Division affirmed the petitioner's conviction unanimously. See People v. Reyes, 17 A.D.3d 205, 206, 794 N.Y.S.2d 14, 15 (App. Div. 1st Dep't 2005). The Appellate Division found that: (1) the verdict was not against the weight of the evidence; (2) the petitioner received effective assistance from his trial counsel; (3) no perceivable basis for reducing the petitioner's sentence existed; and (4) the petitioner failed to object, or object with adequate specificity, so as to preserve his claims "concerning various aspects of jury selection, the victim's testimony and the prosecutor's summation." Id. The petitioner applied for leave to appeal to the New York Court of Appeals. On June 27, 2005, that application was

denied. See People v. Reyes, 5 N.Y.3d 768, 801 N.Y.S.2d 262 (2005).

On March 17, 2006, the petitioner moved to vacate the judgment, pursuant to New York Criminal Procedure Law ("CPL") § 440.10, based upon claims that: (1) newly discovered exculpatory evidence: the Flik report and the Womack affidavit, would have created a reasonable doubt about whether the rape occurred; and (2) the prosecutor's failure to produce the Flik report and the Womack affidavit constituted a Brady and Rosario violation. The Flik report, which purports to provide "a timeline of events and allegations" related to the rape of Martinez, and which was prepared by employees of Circle Line, included the following information: (1) on the day of the incident, Martinez told Willie Leverman, a grill cook at the concession stand, that "William forced himself upon her"; (2) when King spoke with her superiors, Iovino and Khanii, about her conversation with Martinez on the date of the incident, King did not inform Iovino or Khanii specifically that Martinez had been raped by Reyes, but had suggested that "something bad" happened to an employee, which left Khanii with the impression that "it had to do with some type of sexual behavior"; and (3) Martinez told Nina Monteleone and Jennifer Ruza, whose relationship to Martinez is not disclosed in the record before the Court, that (a) Reyes had "asked her about herself, where she lived etc.," and Martinez "responded to all his questions with correct answers," and (b) Reyes asked Martinez if Martinez's boyfriend could help Reyes "move something into a van off duty," and Martinez agreed and her boyfriend assisted Reyes.

Reyes also attached to his CPL § 440.10 motion the Womack affidavit. Womack stated that, on July 2, 2002, she heard Reyes "request[] . . . a volunteer . . . to retrieve the missing coffee pots," and Martinez "volunteered to go with him." Womack contended that Martinez followed Reyes to the boat and, when Martinez returned to the concession stand, she "looked as if

7

nothing was wrong."

On July 5, 2006, the New York Supreme Court, New York County, denied the petitioner's CPL § 440.10 motion. The court found that: (1) the petitioner failed to show that, with due diligence, he could not have discovered this evidence before trial; and (2) the Flik report and the Womack affidavit did not "meet the newly-discovered-evidence standard," since these documents were, inter alia, unlikely to change the result if a new trial were granted, and did not constitute evidence "material to an issue at defendant's trial." The court also found no merit to the petitioner's Brady and Rosario claims existed. On August 1, 2006, the petitioner moved for leave to appeal from the denial of his CPL § 440.10 motion. On October 19, 2006, the New York State Supreme Court, Appellate Division, First Department, denied him permission to appeal.

The instant application for a writ of habeas corpus followed.

### III. DISCUSSION

Where a state court has adjudicated the merits of a claim raised in a federal habeas corpus petition, 28 U.S.C. § 2254 provides that the writ may issue only if the state court's adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. See 28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 374-90, 120 S. Ct. 1495, 1503-11 (2000); Francis S. v. Stone, 221 F.3d 100, 107-08 (2d Cir. 2000). In addition, when considering an application for a writ of habeas corpus by a state prisoner, a federal court must be mindful that any determination of a factual issue made by a state court is to

be presumed correct and the habeas corpus applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

A.     Conviction Against the Weight of the Evidence

"Federal habeas review is not available where there is simply an error of state law." Tucker v. Phillips, No. 04 Civ. 2964, 2008 WL 4128202, *6 (S.D.N.Y. Sept. 2, 2008) (citing 28 U.S.C. § 2254(a)). "In making a 'weight of the evidence' argument, . . . [the petitioner] does not assert a federal claim as required by 28 U.S.C. § 2254(a)," but, "[r]ather, . . . raises an error of state law, for which habeas review is not available." Douglas v. Portuondo, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002).

The petitioner's claim, that his conviction is against the weight of the evidence because Martinez's testimony "shifted at each retelling and was contradicted by the physical evidence," is not amenable to habeas review. Therefore, granting him habeas corpus relief, based on this claim, would be inappropriate.

B.     Perjured Testimony Based on Newly Discovered Evidence

"[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397 (1976). "In determining what constitutes perjury," the Supreme Court "rel[ies] upon the definition . . . under the federal criminal perjury statute, 18 U.S.C. § 1621." United States v. Dunnigan, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116 (1993). "A witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty

9

memory." Id.

Even assuming, arguendo, that the prosecution knowingly proffered perjured testimony by Martinez as it related to the information in the Flik report and the Womack affidavit, it cannot be said that there is a "reasonable likelihood" that this testimony "affected the judgment of the jury" or that such testimony concerned a "material matter." The information at issue–(1) the number of people Martinez told about the rape on the day of the rape; (2) whether Martinez told Reyes personal information about herself; (3) whether Martinez was asked, or volunteered, to retrieve the coffee urns; and (4) whether Reyes followed Martinez to the boat, or vice versa–are peripheral to whether Reyes raped Martinez. In addition, since King did not testify about the specific information she relayed to Iovino and Khanii, her testimony cannot be said to be inconsistent with, no less evidence of perjury when compared to, the Flik report, since the Flik report notes merely that King had indicated that "something bad" had happened to an employee. Further, although Womack's affidavit contradicted trial testimony that Martinez appeared visibly upset after the rape, that different witnesses observed different demeanor in Martinez does not suggest that any witness testified falsely about his or her observations or provided perjured testimony willfully.

Altogether, it cannot be said that the denial of the petitioner's CPL § 440.10 motion–on the ground that the Flik report and the Womack affidavit did not constitute "newly discovered evidence" since these documents were unlikely to change the result at trial, and did not constitute evidence "material to an issue at defendant's trial"–was either contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. It also cannot be said that these findings were based upon an unreasonable determination

of the facts in light of the evidence presented in the State court proceedings.

C.     Failure to Disclose Exculpatory Evidence

Under Brady, the Government is required to disclose evidence to criminal defendants which "is material [to either] guilt or punishment." Brady, 373 U.S. at 87, 83 S. Ct at 1196-97. This duty extends not only to evidence that is exculpatory, but also to evidence that could be used to impeach a government witness. See Giglio v. United States, 405 U.S. 150, 154, 92 S. Ct. 763, 766 (1972). In the context of Brady, a defendant is deprived of a fair trial where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985), or where the suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict," Kyles v. Whitley, 514 U.S. 419, 435, 115 S. Ct. 1555, 1566 (1995).

Here, Reyes contends the prosecution failed to disclose Brady material: the Flik report and the Womack affidavit. However, as discussed above, the information in the Flik report and the Womack affidavit was not "material" and, thus, even if the Court were to assume, arguendo, that the Flik report and the Womack affidavit constituted Brady material, it is not probable that, if these documents had been disclosed to the defense, the "result of the proceeding would have been different," Bagley, 473 U.S. at 682, 105 S.Ct. at 3383, or the "whole case" would be cast "in such a different light as to undermine confidence in the verdict." Kyles, 514 U.S. at 435, 115 S. Ct. at 1566. Therefore, it cannot be said that the state court's finding that the petitioner's Brady claim was meritless is contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. Further, it cannot be said

11

that the state court's finding was an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

To the extent Reyes argues that the prosecution's failure to disclose the Flik report and the Womack affidavit constituted a Rosario violation, "the failure to turn over Rosario material is not a basis for habeas relief as the Rosario rule is purely one of state law." Randolph v. Warden, No. 04 Civ. 6126, 2005 WL 2861606 *5 (S.D.N.Y. Nov. 1, 2005).

D.      Admission of "Emotional Response" and "Sexual History" Testimony

Generally, federal courts will not consider "a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991). New York's contemporaneous objection rule, codified at CPL § 470.05, has been found to be a procedural bar that qualifies as an independent and adequate state ground, since it is "firmly established" and "regularly followed." Richardson v. Greene, 497 F.3d 212, 219 (2d Cir. 2007); see also Garvey v. Duncan, 485 F.3d 709, 714-15 (2d Cir. 2007) ("A general objection is not sufficient to preserve an issue. . . . Instead New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error."). To overcome this procedural bar, the petitioner must show cause for the default and prejudice flowing therefrom, or that failure to review a claim would result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S. Ct. at 2565. A fundamental miscarriage of justice results "where a constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense." Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004) (internal quotations and

citations omitted). "[I]n this regard[,] . . . 'actual innocence' means factual innocence, [and] not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998).

The petitioner raised, on direct appeal, his claim that the trial court admitted improperly, into the record, "emotional response" and sexual abuse testimony by Martinez. The Appellate Division determined that Reyes did not preserve this claim for appellate review, since he failed to object, or object with adequate specificity, so as to preserve his claims regarding "the victim's testimony." See Reyes, 17 A.D.3d at 205, 794 N.Y.S.2d at 15. Here, Reyes does not attempt to show cause and prejudice for his default; rather, he alleges a miscarriage of justice would result if his claim were not considered since, if the jury had considered the information contained within the Flik report and the Womack affidavit, it "is more likely than not that . . . no reasonable juror would have found Mr. Reyes guilty beyond a reasonable doubt." Inasmuch as Reyes does not allege "factual innocence," and instead contends the information in the Flik report and the Womack affidavit would support a finding that the proof at trial was legally insufficient for the jury to find him guilty beyond a reasonable doubt, he has not demonstrated that a fundamental miscarriage of justice would result if the court declined to consider this claim. Therefore, the petitioner's claim, that the trial court admitted improperly, into the trial record, evidence of the victim's emotional response to the rape and her history of sexual abuse, is procedurally barred, and the petitioner has failed to overcome this bar.

E.  Prosecutorial Misconduct During Jury Selection

As with the petitioner's claim that he was denied a fair trial, by the admission into evidence of Martinez's testimony regarding her "emotional response" and previous sexual abuse,

13

the Appellate Division found the petitioner's prosecutorial misconduct claim was unpreserved for appellate review because Reyes failed to object, or to object with adequate specificity, to the prosecutor's comments during jury selection. See id., at 205, 794 N.Y.S.2d at 15. Reyes has not shown cause or prejudice flowing from this procedural default, nor does he allege that he is factually innocent. Therefore, this claim is procedurally barred, as discussed more thoroughly above, and cannot be a basis upon which to rely in granting habeas corpus relief.

F.      Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, the petitioner must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for counsel's error(s), the outcome of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064-65, 2068 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S. Ct. at 2068. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. at 2065.

Reyes contends his trial counsel rendered ineffective assistance by failing to object to the prosecutor's "prejudicial" questions during the jury selection process. However, the jurors were instructed that they could "not consider anything outside of the evidence," and that "[n]othing that [the trial court or the attorneys] have said is evidence." A jury is presumed to follow the instructions of the trial judge. See Weeks v. Angelone, 528 U.S. 225, 234, 120 S. Ct. 727, 733 (2000). Therefore, it does not appear that the prosecutor's questions during voir dire had any effect on the outcome of the proceeding, and the petitioner's trial counsel did not render

ineffective assistance by failing to object to the prosecutor's questioning during voir dire.

The petitioner claims his trial counsel was ineffective in failing to object to Martinez's testimony regarding: (a) how she felt after she was raped; and (b) the sexual abuse inflicted by her father. Under New York law, "all relevant evidence is admissible unless its admission violates some exclusionary rule." People v. Scarola, 71 N.Y.2d 769, 777, 530 N.Y.S.2d 83, 86 (1988). The Supreme Court has stated that Federal Rule of Evidence 402 "provides the baseline" for the admissibility of evidence. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 587, 113 S. Ct. 2786, 2793-94 (1993). Fed. R. Evid. 402 provides that, with exceptions, "[a]ll relevant evidence is admissible." The term "'[r]elevant evidence' is defined as that which has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Id. at 587, 113 S. Ct. at 2794.

Martinez testified she felt "embarrassed," "sad," "depressed," and "upset," as a result of the incident that occurred on July 2, 2002. This testimony is relevant to whether Martinez had consented to have intercourse with Reyes. See, e.g., People v. Rouse, 142 A.D.2d 788, 788-89, 530 N.Y.S.2d 333, 334 (App. Div. 3rd Dep't 1988) (citing a victim's "emotional state directly following the sexual attack" as evidence properly considered by the jury in convicting the defendant). Martinez's testimony regarding the sexual abuse she suffered in the past, and her failure to report such sexual abuse for several years, was relevant to Martinez's initial delay in reporting the rape to authorities, or mentioning it to her boyfriend. See, e.g., People v. Wigfall, 253 A.D.2d 80, 83, 690 N.Y.S.2d 2, 7-8 (App. Div. 1st Dep't 1999) ("the sexual history evidence was clearly admissible as relevant to the issue of why complainant failed to

15

immediately inform her husband of the rape, as well as to defendant's contention that the sexual encounter was consensual. . . .").

Relevant evidence may be excluded "when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Old Chief v. United States, 519 U.S. 172, 180, 117 S. Ct. 644, 650 (1997) (internal quotations and citations omitted). Here, evidence regarding Martinez's history of being abused sexually was probative of her failure to report the rape by Reyes immediately, and it cannot be said that Reyes was "unfairly prejudice[d]" by the brief testimony by Martinez of the sexual abuse she endured, nor can it be said that the jury was misled by the admission of this testimony. See id. ("[t]he term 'unfair prejudice,' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged"). Likewise, the probative value of Martinez's testimony that she felt embarrassed, hurt, upset, and sad after the rape is not "substantially outweighed by the danger of unfair prejudice" nor is it likely to "mislead[] the jury." See Fed. R. Evid. 403.

Since the probative value of this evidence is not outweighed by any prejudice to Reyes, the claim that the petitioner's counsel was ineffective in failing to object, or to object with specificity, to the admission of Martinez's emotional state after the rape and to the testimony on Martinez's history of sexual abuse by her father, is not supported by the record.

The petitioner's claim that his counsel was ineffective in failing to object to the prosecutor's references, during summation, to the evidence of Martinez's emotional response to the rape and history of sexual abuse, also fails. "Given the . . . broad latitude afforded parties in commenting on evidence during summation," United States v. Bautista, 23 F.3d 726, 734 (2d

16

Cir. 1994) (internal quotations and citations omitted), it cannot be said that the prosecutor's summary of the admitted evidence "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986) (internal quotations and citations omitted). The evidence of Martinez's testimony regarding her emotional response to the rape and her history of sexual abuse was properly admitted. Therefore, the prosecutor's reference to this evidence during summation was appropriate, and any objection to the prosecutor's summation would have been futile.

Altogether, as the above analysis indicates, the Appellate Division's finding that the petitioner's counsel did not render ineffective assistance to him is not contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court. Additionally, it cannot be said that the state court's finding was an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

## IV. RECOMMENDATION

For the reasons set forth above, I recommend that Reyes' petition for a writ of habeas corpus be denied.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Sidney H. Stein, 500 Pearl Street, Room 1010, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an

extension of time for filing objections must be directed to Judge Stein. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983).

Dated: New York, New York
November 20, 2008

Respectfully submitted:

*/s/ Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Stephanie M. Carvlin, Esq.
Jodi Ann Danzig, Esq.